Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| PR RECOVERY AND DEVELOPMENT JV., LLC<br><br>Recurrida<br><br>V.<br><br>VALLEY PRODUCE, INC.; FRANK TORRES RODRÍGUEZ Y OTROS<br><br>Peticionarios | KLCE202301088 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>CS1987-689<br><br>Sobre:<br>Acción Civil |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de octubre de 2023.

Comparecen ante nosotros VALLEY PRODUCE INC; FRANK TORRES RODRÍGUEZ Y OTROS (parte peticionaria) mediante recurso de *certiorari* y nos solicitan que ordenemos la paralización de los procedimientos de ejecución de sentencia ordenados por el Tribunal de Primera Instancia, Sala de Ponce (TPI). Esto, luego de que el pasado 26 de julio de 2023 el TPI emitiera una resolución declarando *NO HA LUGAR* una *Moción en Oposición A Solicitud De Desestimación Y/O Paralización De Procedimientos* presentada por la parte peticionaria. Examinados los escritos presentados, así como el derecho aplicable, acordamos denegar la expedición del auto de *certiorari.* Veamos.

-I-

Los hechos de esta controversia se remontan al 3 de abril de 1987. En esa fecha, la Corporación de Crédito Agrícola (acreedora original de la parte peticionaria) presentó demanda en cobro de dinero. El 12 de marzo de 1990, notificada el 1 de agosto de 1990, el TPI emitió Sentencia contra la parte peticionaria. El 13 de

noviembre de 1997, se solicitó la ejecución de la Sentencia, pero el 21 de junio de 2000, la parte peticionaria presentó una petición de quiebra ante el foro correspondiente, por lo que se paralizaron los procedimientos ante el TPI. Luego de varios trámites procesales, incluyendo varias solicitudes adicionales de protección al amparo de la Ley de Quiebras federal instadas por la parte peticionaria, el 12 de octubre de 2021 Puerto Rico Recovery and Development JV, LLC (en adelante, parte recurrida o PPRD) solicitó que se le sustituyera como parte demandante. El 24 de noviembre de 2021, la parte recurrida solicitó la continuación de los procedimientos.

El 6 de abril de 2022, la parte peticionaria presentó su *Moción en Oposición A Solicitud De Desestimación Y/O Paralización De Procedimientos* objeto de controversia. En esta alegó que la parte recurrida: 1) no prestó la fianza de no residente que requiere la Regla 69.5 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 69.5; 2) que no está autorizada a hacer negocios en Puerto Rico y que, por ello, carece de legitimación activa para reclamar en este pleito; 3) que en litigio independiente se está impugnando la transacción mediante la cual PRRD adquirió ciertas facilidades de crédito de parte del Banco de Desarrollo Económico y 5) que la parte peticionaria instó una petición de expropiación forzosa a la inversa, lo cual tendría el resultado de compensar a todas las partes con interés, incluyendo a los acreedores hipotecarios como lo es la parte recurrida.

El 25 de abril de 2023, la parte recurrida se opuso a la Moción de Paralización. En esta oposición, argumentó que: 1) la fianza de no residente es inaplicable por existir sentencia final y firme desde hace años; 2) que PPRD cae bajo las excepciones que se establecen en el Artículo 13.05 de la Ley General de Corporaciones, 14 LPRA §3805 (A) (8), en donde se establece que garantizar o cobrar deudas o ejecutar hipotecas o garantías en las propiedades que garantizan las deudas, no constituyen transacciones de negocios en Puerto

Rico; (3) que es el acreedor de la parte peticionaria, independientemente de lo que se determine en el caso SJ2019CV11697 (impugnación de la venta del LOAN SALES AGREEMENT por parte del Gobierno de PR y del Banco de Desarrollo Económico en el caso SJ2019CV11697), y por lo tanto, tiene derecho a solicitar la ejecución de la Sentencia ; y (5) que no resulta apropiada la paralización de los procedimientos debido a que, según lo resuelto en el caso *A.C.T. v. 780.6141m2*, 165 DPR 121, 137 (2004), la extinción de la garantía debido a una expropiación forzosa no supone la desaparición o extinción de la acreencia.

El 26 de julio de 2023, el TPI denegó la *Moción en Oposición A Solicitud De Desestimación Y/O Paralización De Procedimientos.* Inconforme, el pasado 2 de octubre de 2023, la parte peticionaria acudió ante nosotros a través de un recurso de *certiorari* señalando los siguientes errores:

> Erró el Tribunal de Primera Instancia al negarse a paralizar los procedimientos del presente caso sin tomar en consideración los potenciales conflictos jurídicos e injusticias que pudieran suscitarse en caso que se ejecute la propiedad de los recurrentes y luego se determine que dicha propiedad es del ELA, en virtud de la expropiación, desde el 2010.

> Erró el Tribunal de Primera Instancia al negar la paralización de los procedimientos ante todas las circunstancias que rodean el alegado derecho de los recurridos a ejecutar la sentencia dictada décadas previo a la impugnación de la venta del LOAN SALES AGREEMENT por parte del Gobierno de PR y del BDE en el caso SJ2019CV11697.

> Erró el Tribunal de Primera Instancia al negarse a paralizar los procedimientos del presente caso sin tomar en consideración los potenciales conflictos jurídicos e injusticias que pudieran suscitarse en caso que se ejecute la propiedad de los recurrentes y luego se determine que es nula la adquisición del acreedor de los pagarés hipotecarios, según persigue el BDE en el caso SJ2019CV11697.

-II-

-A-

El *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para

autorizar su expedición y adjudicar sus méritos." *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391 (2021); *800 Ponce de León v. AIG, 205 DPR 163* (2020), *IG Builders et al. v. BBVAPR, 185 DPR 307,* 338 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp et al.,* 202 DPR 478 (2019). La mencionada Regla dispone que sólo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." *800 Ponce de León v. AIJ, supra.* Ahora bien, en cuanto a las resoluciones atinentes a asuntos postsentencia, si bien estas no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari,* nuestro Tribunal Supremo ha dispuesto que este es vehículo procesal para este tipo de controversia. Ello, pues, "por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia." *IG Builders et al. v. BBVAPR, supra.*

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, prescribe los criterios que debemos tomar en consideración al momento de determinar si expedimos o denegamos el auto solicitado:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

-B-

Un instrumento negociable es una promesa u orden incondicional de pago de una cantidad especifica de dinero si: (1) es pagadero al portador o a la orden al momento de su emisión; (2) es pagadero a la presentación o en fecha específica, y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero. 19 LPRA § 504(a). Un pagaré hipotecario es una "promesa", es decir, "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". *DLJ Mortgage Capital, Inc. v. Santiago Martinez,* 202 DPR 950 (2019) supra, pág. 963; Ley de Transacciones Comerciales 19 LPRA § 503(a) (9). Las transacciones comerciales y los instrumentos negociables, así como su cesión, negociación y exigibilidad, se regulan especialmente por la Ley de Transacciones Comerciales, Ley Núm. 209-1995, según enmendada, 19 LPRA § 401. De esta manera, los principios generales del derecho en nuestra jurisdicción aplicarán de modo supletorio, a menos que estos sean desplazados por disposiciones particulares de la referida Ley. *DLJ Mortgage Capital, Inc. v. Santiago Martínez, supra.*

La Ley de Transacciones Comerciales confiere legitimidad para exigir el cumplimiento de un instrumento negociable a cualquier persona con derechos sobre el instrumento, independientemente si es tenedor de buena fe o no, o si está en posesión inmediata del mismo. A estos efectos, la Ley se refiere en su Sección 2-301 a la "persona con derecho a exigir el cumplimiento de un instrumento" como aquel que es (1) el tenedor del instrumento, (2) una persona que no está en posesión del instrumento y tiene los derechos de un tenedor, o (3) una persona que no está en posesión del instrumento, pero tiene derecho a exigir el cumplimiento del instrumento de acuerdo a las disposiciones de la sección 2-309 y de la sección 2-418(d). Una persona tiene derecho a exigir el cumplimiento del instrumento, aunque la persona no sea el dueño del instrumento o lo posea indebidamente. 19 LPRA § 601.

La Ley de Transacciones Comerciales define en su Sección 1-201 al "tenedor" de un instrumento negociable como la persona en posesión del mismo si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo. 19 LPRA § 451. Se define además al "portador" como la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco. Id.

Un instrumento negociable es pagadero al portador si: (1) especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago; (2) no designa un tomador; o (3) especifica que es pagadera a, o a la orden de, efectivo (cash) o de otra forma indica que no es pagadera a una persona identificada. 19 LPRA § 509(a). Por su parte, una negociación, para efectos de la referida Ley, se refiere a la cesión de la posesión del instrumento, voluntaria o involuntariamente, por una persona que no sea el emisor a una

persona que con ello se convierta en su tenedor. Si el instrumento es pagadero al portador, el mismo puede negociarse mediante la cesión de la posesión solamente. 19 LPRA § 551. La Sección 2-203 de esta Ley establece que una cesión del instrumento ocurre cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho de exigir el cumplimiento del instrumento. Esta cesión, sea una negociación o no, le confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe, salvo que haya participado en un fraude o ilegalidad que haya afectado el instrumento. 19 LPRA § 553(a)-(b). Bajo este precepto, el cedente le transmite al cesionario un crédito y el cesionario sustituye al acreedor como titular activo de la obligación. *IBEC v. Banco Comercial*, 117 DPR 371, 376 (1986). Por tal razón, se reconoce al cesionario que se convierte en tenedor del instrumento como persona con derecho a exigir el cumplimiento del instrumento.

Un pagaré al portador se transfiere esencialmente por la mera entrega del mismo, y es desde ese momento que el tenedor o portador tiene legitimación activa para reclamar el pago. *Lozada Merced v. Registrador*, 100 DPR 99, 104 (1971); *EML Insurance Company v. Banco Popular*, 91 DPR 645, 651 (1965). A su vez, el portador está cobijado por la presunción legal de que el pagaré es válido y de que fue otorgado por causa justa y onerosa, causa que se presume de igual manera por la mera existencia del pagaré. *SJ Credit, Inc. v. Ramírez*, 113 DPR 181, 185 (1982); *Texas Co. PR v. Estrada, y Álvarez, Interventor*, 50 DPR 743, 749 (1936). Si no fuera así, no tendría valor alguno para el que lo recibía en garantía y serían inútiles las disposiciones de ley que autorizan la expedición de pagarés al portador. *Vendrell v. Torres Aguiló*, 85 DPR 873, 876 (1962).

-C-

Nuestro ordenamiento jurídico ha dispuesto que los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599 (2000). Así pues, el Tribunal Supremo ha reiterado que las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones consideradas y decididas. *Félix v. Las Haciendas*, 165 DPR 832 (2005); *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136 (1967).

Es de particular importancia destacar que la doctrina de la ley del caso no se limita a lo decidido mediante sentencia, sino que se aplica igualmente a las órdenes y resoluciones emitidas por un tribunal, una vez éstas advienen finales y firmes. A fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho, un tribunal de instancia, como una cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar sus pronunciamientos dentro de un mismo caso excepto cuando se convenza de que los mismos son erróneos. *Mgnt. Adm. Servs. Corp. v. E.L.A.*, *supra.* Sin embargo, cuando la ley del caso es errónea y puede causar una gran injusticia, puede emplearse una norma de derecho diferente. Secretario del Trabajo v. Tribunal Superior, supra; *Rivera Robles v. Insurance Co. of Puerto Rico*, 103 DPR 91 (1974). A tales efectos, el Tribunal Supremo ha declarado que se trata de un mandato invariable o inflexible y recoge una costumbre deseable de que las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras. *Mgmt. Adm. Servs, Corp. v. E.L.A.*, *supra.*

Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó en revisión si el caso vuelve a su consideración. En específico, las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el Tribunal. Ahora bien, la doctrina de la ley del caso solo puede invocarse cuando exista una decisión final de la controversia en sus méritos. *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1 (2016); *Félix v. Las Haciendas, supra*. En *Cacho Pérez v. Hatton Gotay, supra*, el Tribunal Supremo de Puerto Rico aclaró el alcance de la aplicación de la doctrina de la ley del caso en lo que respecta a la resolución de asuntos interlocutorios. Dicho foro precisó que en el contexto de la adjudicación de peticiones de certiorari sobre asuntos interlocutorios, se ha resuelto que la denegatoria de un tribunal apelativo a expedir el auto no implica la ausencia de error en el dictamen cuya revisión se solicita, ni constituye una adjudicación en los méritos. Por lo tanto, en esos casos no aplica la doctrina de la ley del caso. Por el contrario, sí les aplica la doctrina de la ley del caso a los asuntos atendidos, discutidos y resueltos en los méritos por el Tribunal de Apelaciones. *Id.*

-III-

La parte peticionaria, para persuadirnos en su contención de que ordenemos la paralización de la orden dictada en el caso en controversia alude a un caso resuelto por un Panel Hermano de este Tribunal de Apelaciones. En *Frutos De La Montaña De Lares, INC. et al v. PR Recovery And Development JV*, LLC KLAN202300013 (TA PR 20 de abril de 2023) se solicitó que se revocara una Sentencia Parcial dictada sumariamente el 1 de diciembre de 2022, por el Tribunal de Primera Instancia, Sala Superior de San Juan. La parte apelante arguyó ante el referido Panel que no procedía disponer del asunto sumariamente ni ordenar la venta judicial de varias propiedades

pertenecientes a la parte Apelante. En este caso, la parte Apelante argumentó que erró el TPI al declarar con lugar la moción de sentencia sumaria presentada por PPRD (parte recurrida en el presente caso) debido a que entendía que existía controversia sobre hechos materiales que impedían que el caso se resolviera por la vía sumaria.

En aquel momento, PPRD alegó en su Solicitud de Sentencia Sumaria ser tenedora de buena fe de los instrumentos negociables suscritos por la Apelante. Sin embargo, en su Sentencia el Panel Hermano de este Tribunal de Apelaciones entendió que debido a que existía controversia en cuanto a la titularidad de los créditos objeto de cobro no se justificaba la utilización del mecanismo procesal de Sentencia Sumaria por parte del foro primario para adjudicar el caso. El panel hermano consideró que era necesario desfilar prueba sobre la legitimidad de los alegados endosos utilizados para la cesión de los pagarés, sobre la naturaleza corporativa de PPRD al momento de la venta de los préstamos, sobre las formalidades de las transacciones, sobre la inspección de todos los documentos originales y sobre la autorización para actuar de ciertas personas a nombre del Banco de Desarrollo Económico.

En su determinación, el panel hermano de este Tribunal de Apelaciones consideró que para determinar la legalidad de la venta de préstamos había que adjudicar en juicio plenario si PPRD es o no tenedora de buena fe de los instrumentos negociables suscritos por la Apelante. Esto pues, si se determinaba que la adquisición de créditos objeto de la acción del Banco de Desarrollo Económico era ilegal o que la compraventa de la cartera de préstamos de dicho banco fuera anulada, ello afecta la titularidad de PPRD sobre los créditos objeto de la acción de cobro y ejecución de hipoteca dilucidándose en el referido caso.

Establecido lo anterior, la primera razón que nos presenta la parte peticionaria en su argumentación es que podrían ocasionarse potenciales conflictos jurídicos e injusticias en caso de que se ejecute la propiedad de los recurrentes y luego se determine en el caso de expropiación a la inversa que dicha propiedad pertenece al ELA. La segunda razón por la cual la parte peticionaria entiende que el TPI debió paralizar los procedimientos es que, a su entender, existen circunstancias en controversia sobre la validez de la venta de la cartera de préstamos que inciden sobre el alegado derecho de los recurridos a ejecutar la sentencia, la cual no debemos perder de vista que fue dictada décadas previo a la impugnación de la venta del LOAN SALES AGREEMENT por parte del Gobierno de PR y del BDE en el caso SJ2019CV11697. Relacionado a lo anterior, la parte peticionaria considera que el TPI debía paralizar los procedimientos está relacionada a los potenciales conflictos jurídicos e injusticias que pudieran suscitarse en caso de que se ejecute la propiedad de los recurrentes y luego se determine que es nula la adquisición del acreedor de los pagarés hipotecarios, según persigue el BDE en el antes referido caso SJ2019CV11697.

Por estar íntimamente relacionados, discutiremos los tres errores de manera conjunta. En el caso ante nuestra consideración, la parte peticionaria nos solicita que lleguemos a la misma conclusión a la que llegó el Panel Hermano de este Tribunal en el caso *Frutos De La Montaña De Lares, INC. et al v. PR Recovery And Development JV, LLC, supra.* Sin embargo, luego de realizar un análisis de la Ley de Transacciones Comerciales y su jurisprudencia interpretativa, y considerada la totalidad de las circunstancias específicas del caso ante nuestra consideración, no podemos avalar tal pretensión.

Consideramos que resulta innecesario que el foro primario dirima en juicio ordinario si PPRD es poseedor de buena fe de los

pagarés y a su vez, si es el verdadero deudor con derecho a cobrar, para que se continue con los procedimientos de ejecución de sentencia. Surge del expediente ante nuestra consideración que PPRD es el tenedor de los pagarés, por lo tanto, según se desprende de la Ley de Transacciones Comerciales, tiene el derecho a cobrar los créditos.[1]

Debemos enfatizar que, contrario al caso de *Frutos De La Montaña De Lares, supra*, en el caso que nos ocupa nos encontramos ante una sentencia dictada en 1987. Por lo tanto, los derechos y obligaciones adjudicados en el dictamen judicial ya son finales y firmes y constituyen la ley del caso. De otra parte, debemos subrayar que el caso de *Frutos De La Montaña* no tiene valor de precedente y que existen otros casos de este Tribunal donde el resultado alcanzado, con la misma parte demandante y donde se plantearon controversias análogas, ha sido distinto. A manera de ejemplo tenemos el caso de *PR Recovery And Development JV, LLC v. Grupo Pera, LLC et al v. Banco de Desarrollo Económico de Puerto Rico,* KLAN202100827, Sentencia de 18 de enero de 2022, donde entre otras cosas otro Panel Hermano concluyó que hasta que un Tribunal competente no determine que la venta de la cartera de préstamos es nula, el cesionario de los préstamos vendidos puede hacer gestiones para cobrar las sumas adeudadas, si el deudor incumplió con los términos del contrato.[2]

El alegado fracaso a la justicia planteado por la parte peticionaria no afecta el resultado del caso y no anula la obligación

---

[1] Véase Anejo 1 de la oposición a la expedición del *certiorari*.

[2] Véase además, *PR Recovery and Development REO, LLC v. Green Recycling Solutions, LLC et als*, KLCE202000496, Sentencia de 31 de agosto de 2020, donde se concluyó "el tenedor del pagaré, en este caso el recurrido, tiene legitimación activa para reclamar el cobro de los pagarés endosados a su favor, ya que tiene una presunción legal de que es válido y que fue otorgado por causa justa y onerosa. Por consiguiente, no procede que se paralice el procedimiento de cobro y ejecución de hipoteca radicado por el recurrido, hasta que sea determinado en un pleito independiente la alegada nulidad de la compraventa del préstamo en cuestión."

que estos deben cumplir. Independientemente de que en un futuro se resuelva que PPRD no es la acreedora con derecho, o se anule la referida venta de los préstamos a la parte recurrida, ello no exime a los peticionarios de cumplir con la deuda. En caso de que un tribunal anule la referida venta de los préstamos, será responsabilidad del nuevo acreedor cobrarle a PPRD lo que la parte peticionaria haya pagado.

Los potenciales conflictos jurídicos e injusticias que pudieran suscitarse en caso de que se ejecute la propiedad de los recurrentes y luego se determine que es nula la adquisición del acreedor de los pagarés hipotecarios o que se determine que la finca en controversia fue expropiada por el ELA, en efecto son potenciales, y especulativos por lo que reiteramos que no afectan la obligación que estos deben cumplir. Recordamos que la hipoteca de una finca, según el artículo 62 de nuestra ley del registro de la propiedad se extiende a las compensaciones otorgadas por expropiación forzosa. Véase el art. 62 de Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico 30 LPRA § 6089. Véase también *Autoridad de Carreteras v. lñesta*, 165 DPR 891 (2005).

En suma, si consideramos cada uno de los errores y posibilidades planteados por la parte peticionaria, el resultado siempre será el mismo, y es que deben cumplir con su obligación según reconocida en la Sentencia, ya final y firme, y cuya ejecución ha sido postergada por más de treinta años.

-IV-

Por los fundamentos que exponemos a continuación, denegamos la petición de *certiorari* presentada por la parte peticionaria.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio disiente de la determinación de la mayoría del panel con las siguientes expresiones: Disiento, respetuosamente, de la determinación tomada por los fundamentos consignados en la sentencia dictada en el caso **Frutos de la Montaña de Lares, Inc. V. PR Recovery and Development JV LLC**, KLAN202300013, ante idénticos planteamientos.

Entiendo que, en correcta práctica apelativa, se debe expedir el auto de certiorari solicitado y paralizar los procedimientos en lo que se adjudica la titularidad de los créditos objeto de ejecución. Adviértase que está en controversia la legitimidad de los alegados endosos utilizados para la cesión de los créditos; la naturaleza corporativa de PR Recovery and Development JV LLC ( PR Recovery) al momento de la venta de los préstamos; las formalidades de las transacciones; la inspección de los documentos originales y la autorización para actuar de ciertas personas a nombre del Banco de Desarrollo Económico(BDE), quien precisamente cuestiona la legalidad de la transacción que se pretende ejecutar.

Al tratarse de fondos públicos, resulta indispensable determinar si PR Recovery es o no tenedora de buena fe de los instrumentos negociables que se intentan ejecutar. De determinarse que la adquisición de créditos objeto de la acción es ilegal o que la compraventa de la cartera de préstamos del BDE fuera anulada, afecta directamente la titularidad de PR Recovery sobre los créditos que aquí pretende ejecutar.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones