ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **FEDERACIÓN PUERTORRIQUEÑA DE FÚTBOL**<br><br>Recurrido<br><br>v.<br><br>**BEST GROUP INSURANCE O.D.M.; CHUBB INSURANCE AGENCY, INC.; ANGLO HOLDINGS LLC; ANGLO-PUERTO RICAN INSURANCE CORPORATION; ANTILLES INSURANCE COMPANY; JANE DOE Y COMPAÑÍAS X, Y, Z**<br><br>Peticionario | KLCE202500559 | ***CERTIORARI acogido como Apelación*** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.:<br>**SJ2024CV06135**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

Cintrón Cintrón, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 24 de julio de 2025.

Comparece ante este Foro, Chubb Insurance Company of Puerto Rico (Chubb) y solicita que revoquemos la *Sentencia Parcial* emitida el 4 de abril de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante la misma, el foro primario declaró *Ha Lugar*, en parte, la *Moción en Solicitud de Sentencia Sumaria* presentada por la Federación Puertorriqueña de Fútbol (Federación) y *No ha Lugar* las solicitudes de sentencia sumaria incluidas en las respectivas oposiciones de Chubb y Best Group Insurance O.D.M. (BGI).

Por tratarse de una *Sentencia Parcial* a la cual se le incluyó la frase de "que no existe razón para posponer el que se dicte

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones. El juez Sánchez Báez sustituye a la jueza Rivera Marchand.

sentencia", acogemos el recurso como una apelación. Sin embargo, se mantendrá el mismo alfanumérico asignado por la Secretaría de este Tribunal de Apelaciones por cuestiones de economía procesal.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

## I.

Según surge del expediente, el 28 de junio de 2024, la Federación incoó una demanda sobre daños y perjuicios en contra de Chubb, como aseguradora, BGI, como representante autorizado, y Anglo Holdings LLC (Anglo Holdings) como la compañía matriz de las partes codemandadas Anglo-Puerto Rican Insurance Corporation (Anglo PR) y Antilles Insurance Company (Antilles).

En esta, en síntesis, alegó que era una asociación sin fines de lucro dedicada a servicios recreacionales y deportivos y que BGI era su corredora, agente o representante de seguro. Expuso que el Sr. Raúl Rivera, en representación de la Federación, realizó una consulta con el Sr. Orlando Rivera, empleado de BGI, relacionada a una posible demanda en contra de la Federación. Ello con la intención de obtener información sobre cómo proceder con la póliza de seguros DO3672 suscrita con Chubb y adquirir representación legal ante la posible reclamación. Adujo que, posteriormente, Chubb le envió respuesta a BGI informando que estaban en la disposición de evaluar la representación legal que la Federación recomendara – aclarando que para ello requerían cierta información— o que, en la alternativa, podrían asignar la defensa a su panel de abogados.

En su escrito, la Federación aseveró que, tras enviar los documentos requeridos a BGI y solicitar el estatus de su reclamación, recibió respuesta del Sr. Edgardo Corujo, representante de Chubb, en la cual se le informó que no tenían objeción en cuanto a que el bufete recomendado asumiera la representación legal. Alegó también que, el 8 de junio de 2023,

Chubb envió a la Sra. Carmen Pérez Rivera, empleada de Antilles y Anglo PR, una carta denegando la cubierta solicitada por la Federación. No obstante, sostuvo que no fue sino hasta el 17 de enero de 2024 que BGI le remitió la referida carta.

A esos efectos, reiteró que ni BGI, Chubb y Antilles le informaron sobre la denegatoria de cubierta, a pesar de tener conocimiento de ello y de que el bufete había comenzado a trabajar el caso, defender los intereses de los asegurados y a facturar por sus servicios. Por todo lo anterior, concluyó que las partes codemandadas la indujeron a error e incumplieron con su responsabilidad y obligación legal de informarle sobre el tema de defensa y cubierta.

El 4 de septiembre de 2024, BGI instó su *Contestación a Demanda.* Allí aceptó haber sido representante autorizado de seguro de la Federación y que, como parte de sus funciones, se encargó de gestionar la suscripción de ciertas pólizas de la Federación. Planteó como defensa que la decisión de denegar la cubierta e informar al asegurado de la denegatoria de cubierta recaía exclusivamente en la aseguradora o en su agente general. Además, alegó que en ningún momento Chubb ni Anglo PR le solicitaron que notificara a la Federación la denegatoria de la cubierta.

El 11 de septiembre de 2024, Chubb presentó su *Contestación a Demanda.* Mediante esta, negó las alegaciones de incumplimiento y negligencia en el manejo de la reclamación de la Federación. Adujo que se reservó sus derechos sobre la determinación de cubierta y tarifas de defensa y añadió que, en cumplimiento con sus obligaciones estatutarias y contractuales, resolvió oportunamente la reclamación de la Federación. En ese sentido, especificó que recibió notificación de la reclamación el 1 de mayo de 2023 y que, a pesar de contar con un término de noventa (90) días para investigar y

resolver la reclamación de la Federación, notificó su denegatoria de cubierta en un término de treinta y ocho (38) días.

Luego de varias incidencias procesales, el 7 de noviembre de 2024, la Federación instó *Moción en Solicitud de Sentencia Sumaria.* Mediante la misma, aseguró que no existía controversia en cuanto a que presentó una reclamación ante las partes codemandadas el 1 de mayo de 2023 y que la resolución le fue notificada el 17 de enero de 2024. Reiteró que ninguna de las partes codemandadas le informó la denegatoria de la cubierta dentro de los noventa (90) días de haber presentado su reclamación según disponía la ley y concluyó que, por tal razón, estas habían sido negligentes y debían responder por los daños causados.

En desacuerdo, el 15 de enero de 2025, Chubb presentó *Oposición a "Moción en Solicitud de Sentencia Sumaria" [SUMAC #30].* Sostuvo que la solicitud de sentencia sumaria de la Federación fue instada de manera prematura y sin cumplir con los requisitos de la Regla 36 de Procedimiento Civil. También, aseveró que no existía controversia en cuanto a que, a la fecha de los hechos, BGI era el representante autorizado de seguros de la Federación y que, como BGI recibió la denegatoria de cubierta de Chubb dentro del término de noventa (90) días de la reclamación, dicho acto constituyó una notificación oportuna. Arguyó además que, el cuestionamiento de si BGI, como representante autorizado de seguros de la Federación, remitió o no la comunicación a la Federación era un asunto separado, distinto y ajeno a Chubb. Por lo que, solicitó al foro primario que dictara sentencia sumaria a su favor y, en consecuencia, desestimara con perjuicio la causa de acción instada en su contra.

Por su parte, el 21 de enero de 2025, BGI presentó *Moción en Oposición a Solicitud de Sentencia Sumaria.* En esta, alegó que gestionó el seguro en controversia pero negó que fuera agente,

corredor o bróker de la Federación o que existiera relación contractual alguna entre ambas partes. Manifestó que era Chubb quien tenía el deber de notificar cualquier asunto referente al contrato o póliza a su asegurado. Además, tras reiterar la inexistencia de un contrato entre BGI y la Federación, reclamó que no existía violación contractual alguna y solicitó la desestimación del pleito en su contra.

En la misma fecha, Anglo PR presentó una *Moción para Unirse a Oposición a Moción en Solicitud de Sentencia Sumaria* en la que suscribió los fundamentos esbozados por Chubb en su oposición.

Así las cosas, el foro primario concedió un término de veinte (20) días a la Federación para que presentara su oposición respecto a las solicitudes de sentencia sumaria instadas por Chubb y BGI en sus respectivas oposiciones.

En cumplimiento, el 24 de febrero de 2025, la Federación presentó su escrito. Mediante el mismo, se limitó a alegar que el foro de instancia no estaba obligado a considerar la oposición y solicitud de sentencia sumaria instada por Chubb debido a que no cumplía con los requisitos de forma de la Regla 36 de Procedimiento Civil. Además, instó una *Moción en Solicitud de Vista Argumentativa en Relación a la Solicitud de Sentencia Sumaria de la FPF*, lo que fue concedido por el tribunal mediante *Orden* de 25 de febrero de 2025.

De otra parte, el 26 de febrero de 2026, la Federación presentó *Moción en Oposición a Solicitud de Sentencia Sumaria de BGI [Entrada Núm. 57 en SUMAC]*. En esta, señaló que los únicos hechos materiales y pertinentes para dictar sentencia de forma sumaria, a su favor, eran los siguientes: 1) que existía una relación contractual "asegurado-aseguradora" entre la Federación y Chubb, 2) que cuando hay una relación "asegurado-aseguradora" hay una obligación contractual, por parte de la aseguradora, de notificar la determinación de cubierta al asegurado que instó un reclamo, y 3)

que ninguna de las codemandadas le notificó que la cubierta había sido denegada totalmente dentro del término al que venían obligadas. En cuanto al planteamiento de BGI de que no existía una relación contractual entre ambas partes, la Federación sostuvo que esta había previamente admitido ser su representante autorizado de seguros, lo cual conllevaba un deber de actuar como intermediario entre Chubb, Antilles/Anglo PR y la Federación.

Luego de celebrada la vista argumentativa, el 4 de abril de 2025, el foro *a quo* emitió la *Sentencia Parcial* que hoy revisamos. Mediante la misma, declaró *Ha lugar*, en parte, la solicitud de sentencia sumaria presentada por la Federación y *No ha lugar* las solicitudes de sentencia sumaria incluidas en las respectivas oposiciones de Chubb y BGI. En esta, determinó que las partes codemandadas BGI, como representante autorizado, Chubb, como asegurador y Anglo PR, como agente general, tuvieron conocimiento de la carta denegatoria de cobertura emitida por Chubb. Asimismo, concluyó que estas tenían la obligación de asegurarse que dicha misiva fuera notificada a la Federación dentro del término de noventa (90) días dispuesto en el Artículo 27.162 del Código de Seguros, *supra*. En su dictamen, el Tribunal formuló las siguientes determinaciones de hechos:

1. La Federación Puertorriqueña de Fútbol es una asociación dedicada a servicios recreacionales y deportivos, sin fines de lucro y debidamente inscrita en el Registro de Corporaciones, comparece como Parte Demandante en el caso de epígrafe, representada por su presidente, Sr. Iván A. Rivera. Su dirección física es: Calle Los Ángeles Final Parque de Santurce, DRD, Piso 2, San Juan, Puerto Rico 00909. Su dirección postal es: P.O. Box 367567 San Juan, Puerto Rico 00936-7567. El número de registro de la FPF es 6493. El agente residente es la Federación Puertorriqueña de Fútbol.

2. La codemandada Chubb Insurance Company of Puerto Rico o Chubb Insurance Agency (según denominada en la DEMANDA [1]) tiene el número de registro 424 ante el Departamento de Estado. La dirección física de Chubb es 33 Calle Resolución, Ste. 500, San Juan, PR. 00920-2717; su dirección

postal es P.O. Box 191249, San Juan, PR 00919-1249; y su número de teléfono es (787) 274-4700.

3. La codemandada, Best Group Insurance O.D.M. Corp., antes conocida como "Best Group Insurance O.A. Corp.," era representante de seguro de la FPF. Best Group Insurance O.D.M. Corp. es una corporación doméstica con fines de lucro debidamente inscrita en el Registro de Corporaciones de Puerto Rico. Su dirección física es Ave. Roosevelt Edificio 236 3-B, San Juan, Puerto Rico 00918, y su dirección postal es P.O. Box 194076, San Juan, Puerto Rico 00919. Según surge del Informe Anual 2023 expedido por el Departamento de Estado, con fecha de 13 de abril de 2024, el número telefónico de BGI es (787) 960-6162. El número de registro de BGI es 205224. BGI ha designado al Sr. Omar Díaz Muñoz como su agente residente y, en calidad de agente residente, comparte la dirección física y postal de BGI. El Sr. Díaz Muñoz ostenta el puesto de presidente y tesorero de BGI.

4. La codemandada, Anglo-Puerto Rican Insurance es una agencia general de seguros, doméstica, con fines de lucro, debidamente inscrita en el Registro de Corporaciones de Puerto Rico, con número de registro 941. Según la página electrónica del Departamento de Estado su dirección física es Edificio Ochoa, 500 Calle Tanca, San Juan, Puerto Rico 00901 y su dirección postal es P.O. Box 9020083, San Juan, Puerto Rico 00902-0083. Su agente residente es Raymond Pérez Brayfield y su dirección física es Edificio Ochoa, 500 Calle de la Tanca, Ste. PH, San Juan, Puerto Rico 00901-1966, y su dirección postal es P.O. Box 9023752, San Juan, Puerto Rico 00901-3752. La misma página indica que su presidente es Jaime J. González Portilla y que su vicepresidente es Roberto F. Fortuño. Según el Informe Anual del Comisionado de Estado con fecha de 31 de diciembre de 2023, Anglo Puerto Rican es el "managing general agent" de Antilles.

5. La codemandada, Antilles Insurance Company es una compañía de seguros doméstica con fines de lucro, debidamente inscrita en el Registro de Corporaciones de Puerto Rico, con número de registro 44. Según surge del Informe Anual de la página electrónica del Comisionado de Seguros de Puerto Rico con fecha de 31 de diciembre de 2023, Antilles es una compañía subsidiaria de Anglo Holdings y su agente general principal es Anglo PR. El Informe Anual revela que la dirección física de Antilles es Edificio Ochoa, 500 Calle Tanca, San Juan, Puerto Rico 00901 y su dirección postal es P.O. Box 9023507, San Juan, Puerto Rico 00902-3507. Según surge del mismo Informe Anual, su presidente y CEO es Jaime J. González, su "statutory statement contact" es Roberto F. Fortuño y su número telefónico es (787) 474-4900. El Sr. Fortuño

también ostenta las posiciones de vicepresidente ejecutivo y CFO.

6. El 27 de junio de 2022, Chubb suscribe la póliza de seguro DO3672 a favor de la FPF con fecha de efectividad del 1 de junio de 2022 (12:01 a.m.) hasta el 1 de junio de 2023 (12:01 a.m.) denominada "Management Protection Insurance Policy".

7. BGI era representante autorizado de seguro de la FPF desde el 17 de octubre de 2019 hasta algún tiempo después de la ocurrencia de los hechos alegados en la demanda.

8. El 26 de abril de 2023, el señor Raúl Rivera de FPF le envía correo electrónico a al señor Orlando Rivera solicitando orientación de cómo proceder con una alegada demanda contra FPF.

9. El 27 de abril de 2023, el al señor Orlando Rivera le envía correo electrónico al destino propiedad@bestgrouppr.com solicitando orientación con relación a la demanda contra la FPF.

10. El 27 de abril de 2023, Yamilka Falero, ejecutiva de cuentas de BGI, le indica a Orlando Rivera, los pasos a seguir.

11. El 27 de febrero de 2023, el al señor Orlando Rivera le envía correo electrónico a Iván Rivera y Raúl Rivera de FPF indicándole los pasos a seguir con la demanda recibida.

12. El 1 de mayo de 2023, Yamilka Falero, ejecutiva de cuentas de BGI, envía correo electrónico con dirección carmen.perez@anglo-antilles.com, incluyendo la demanda y emplazamientos contra la FPF.

13. El 1 de mayo de 2023, Carmen Pérez Rivera, "Commercial Lines Manager" de Antilles Insurance Company / Anglo-Puerto Rican Insurance (en adelante "Anglo-Antilles"), envía correo electrónico con dirección puertorico-firstnotice@chubb.com, incluyendo la demanda y emplazamientos contra la FPF.

14. El 8 de mayo de 2023, Yamilka Falero, ejecutiva de cuentas de BGI, le envía correo electrónico a Edgardo Corrujo, "Financial Lines Claims Unit" de Chubb solicitando estado sobre la consulta de la representación legal para la FPF.

15. El 9 de mayo de 2023, Edgardo Corrujo de Chubb le envía a Yamilka Falero de BGI indicando su disponibilidad para evaluar la representación legal de FPF y añadió que se encuentran trabajando con la carta de cubierta.

16. El 11 de mayo de 2023, Yamilka Falero de BGI le envía a Edgardo Corrujo de Chubb, la información

solicitada sobre la firma de abogados Adsuar Muñiz Goyco Seda & Pérez-Ochoa P.S.C.

17. El 16 de mayo de 2023 Edgardo Corrujo de Chubb le envió correo electrónico a Yamilka Falero de BGI informando, principalmente, que no tenían objeción a la firma recomendada, pero que se encuentran en el proceso de evaluación de cubierta y se reservaron el derecho sobre la determinación de cubierta.

18. El 8 de junio de 2023, Edgardo Corrujo de Chubb envió correo electrónico a Carmen Pérez Rivera de Anglo-Antiles acompañado carta denegando cobertura a FPF.

19. El 12 de junio de 2023, Norma Vega Alarcón, "Senior Underwriter" de Anglo-Antiles envía correo electrónico a Yamilka Falero, ejecutiva de cuentas de BGI acompañando la carta emitida por Chubb denegando cobertura a FPF.

20. El 6 de diciembre de 2023, Yamilka Falero de BGI envía correo electrónico a Carmen Pérez Rivera de Anglo-Antiles con relación a facturas sobre representación legal de FPF.

21. El 12 de diciembre de 2023, Yamilka Falero de BGI envía correo electrónico [a] Carmen Pérez Rivera de Anglo-Antilles con relación a facturas sobre representación legal de FPF.

22. El 17 de enero de 2024, Yamilka Falero de BGI envía correo electrónico a Iván Rivera y Raúl Rivera de la FPF y a Orlando Rivera, anejando copia de la carta emitida por Chubb denegando cobertura a FPF.

23. La póliza de seguros DO3672 emitida por el asegurador Chubb para el asegurado FPF indica en la sección de notificaciones incluida en la página 32: "Notice to the Insureds may be given to the Parent Company at the address as shown in Item 1 of the Declarations."

24. Por su parte el "Item 1" al que se hace referencia en la póliza de seguros DO3672, indica lo siguiente:

"Item 1. Company Federación Puertorriqueña de Fútbol Principal Address PO Box 367567, San Juan, PR 00936".

25. La carta denegando cobertura bajo la póliza de seguro DO3672 suscrita por Chubb y fechada 8 de junio de 2023, indica la misma dirección para envío de notificaciones al asegurado del "item 1" detallado en la determinación de hechos núm. 20.

26. Mediante la póliza de seguros DO3672 emitida por el asegurador Chubb para el asegurado FPF, Chubb incluyó que las notificaciones se harían a la

FPF a la dirección descrita en la determinación de hechos núm. 20 y no lo hizo.

27.   Desde el 12 de junio de 2023 BGI, representante autorizado de la FPF, tenía conocimiento de la denegatoria de cubierta de la póliza de seguros DO3672 Chubb y no le informó a la FPF hasta el 17 de enero de 2024 mediante la comunicación en la determinación de hechos núm.

28.   Desde el 8 de junio de 2023 Anglo-Antilles tenía conocimiento de la denegatoria de cubierta de la póliza de seguros DO3672 Chubb y se limitó a enviar la carta de denegatoria de cobertura bajo la póliza DO3672 a BGI el 12 de junio de 2023 mediante la comunicación en la determinación de hechos núm. 15.

En desacuerdo, el 21 de abril de 2025, Chubb presentó *Solicitud de Reconsideración* pero la misma fue denegada por el foro primario.

Aun insatisfecho, el 23 de mayo de 2025, Chubb acudió ante este foro revisor señalando los siguientes errores:

> Erró el TPI al emitir Sentencia Parcial y adjudicarle incumplimiento a Chubb, a pesar de que la póliza no establece una *obligación* sobre la forma de notificar al asegurado.

> Erró el TPI al emitir Sentencia Parcial y adjudicarle incumplimiento a Chubb, a pesar de que no existe una disposición contractual o estatutaria que establezca una obligación legal para que Chubb *supervise* los actos de un tercero con quien no tiene relación alguna.

El 25 de junio de 2025, la Federación compareció mediante *Oposición a Recurso de Certiorari*. Luego, el 30 de junio de 2025, BGI presentó su *Oposición a Solicitud de Certiorari*.

De acuerdo con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho". Así, prescindimos de la comparecencia de Anglo Holdings, Anglo PR y Antilles y procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[2] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una

---

[2] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.[3]

Nuestro estado de derecho le exige al TPI exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria.

---

[3] Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que, al momento de presentar una solicitud de sentencia sumaria, se deben cumplir con los requisitos de forma: (1) exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).
Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**B.**

Como se sabe, el contrato de seguros está altamente reglamentado por el Estado y es regulado por las normas establecidas en el Código de Seguros de Puerto Rico, Ley Núm. 77 del 19 de junio de 1957, 26 LPRA sec. 101 *et seq.* Este ha sido definido como aquel "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. Bajo este tipo de contratos, el asegurado asume determinados riesgos a cambio de una prima o cuota, que deriva una obligación por parte del asegurador a responder por los menoscabos económicos que sufra el asegurado en caso de que ocurra el evento especificado en la póliza. Véase, *ECP Incorporated v. OCS*, 205 DPR 268 (2020). Por lo tanto, los contratos de seguro tienen como característica esencial la obligación de indemnizar. *OCS v. CODEPOLA*, 202 DPR 842, 859 (2019). Del

mismo modo, los contratos de seguro son de extrema buena fe. *Velilla v. Pueblo Supermarkets, Inc.*, 111 DPR 585, 587-588 (1981).

Generalmente, al momento de producirse el suceso incierto previsto en la póliza de seguros suelen generarse controversias con relación a los términos pactados y los sucesos que obligan al asegurador a responder por el asegurado. *SLG Francis Acevedo v. SIMED*, 176 DPR 372, 386 (2009). Empero, para disipar las desavenencias que se puedan suscitar, el Código de Seguros de Puerto Rico, *supra*, establece como norma de hermenéutica que todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125; *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012); *Echandi Otero v. Stewart Title*, *supra*, pág. 369; *Monteagudo Pérez v. ELA*, 172 DPR 12 (2007); *Díaz Ayala et al. v. ELA*, 153 DPR 675, 691 (2001). Así, la relación entre aseguradora y asegurado se rige por lo pactado en el contrato de seguros, que constituye la ley entre las partes. *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007). Por consiguiente, solo cuando medien situaciones no previstas por el Código de Seguros de Puerto Rico, las normas generales de interpretación de contratos de nuestro Código Civil aplicaran de manera supletoria. *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1, 6 (1981).

La póliza ha de interpretarse "conforme al propósito de la misma, o sea, el ofrecer protección al asegurado". *Coop. Ahorro y Créd. Oriental v. SLG*, 158 DPR 714, 723 (2003). No obstante, aun cuando un contrato de seguro debe ser interpretado liberalmente a favor del asegurado —por ser un contrato de adhesión— si el lenguaje del contrato es explícito, no queda margen para interpretaciones que violenten obligaciones contraídas al amparo de

la ley, que se atengan a lo acordado por las partes y que no contravengan el interés público. *Rivera Robles v. Insurance Co. of Puerto Rico*, 103 DPR 91 (1974).

En atención a la controversia ante nuestra consideración, el Art. 27.162 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716b, el cual establece los términos para la resolución de reclamaciones, señala en lo pertinente que, "[l]a investigación, ajuste y resolución de cualquier reclamación se hará en el período razonable más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación".

**III.**

Por su estrecha relación, discutiremos los señalamientos de error conjuntamente.

En esencia, Chubb sostiene que erró el foro primario al emitir la sentencia parcial y adjudicarle incumplimiento a pesar de que: 1) la póliza no estableció una obligación sobre la forma de notificar al asegurado y 2) no existe una disposición contractual o estatutaria que establezca una obligación legal para que Chubb supervise los actos de un tercero con quien no tiene relación alguna. La parte apelante reitera que emitió una carta sobre denegatoria de cubierta y que la notificó a través de su agencia general (Anglo), quien, a su vez, la notificó el 12 de junio de 2023 al representante autorizado de seguros de la Federación. Por tal razón, concluye que la notificación de la referida carta a BGI constituyó una notificación adecuada y oportuna de Chubb a la Federación.

Por otra parte, la Federación plantea que, por disposición de ley, el Asegurado tiene derecho a ser notificado de la determinación de cubierta dentro del período de noventa (90) días, contados a partir desde que presentó su reclamo. Sostiene además que, el hecho de que la póliza estableciera que Chubb "podría" notificarle al Asegurado dirigiéndole un mensaje a la dirección contenida en el

"Item 1" de la póliza, equivale a una cláusula abusiva, conforme lo dispone el Artículo 1249 del Código Civil de 2020, 31 LPRA sec. 9803. Añade que Chubb le envió la carta denegatoria a su representante (Anglo/Antilles) sin instrucciones claras de que debía enviársela a la Federación y que tampoco constató si su Asegurado la recibió dentro del término legal y contractual. Así, asevera que Chubb pretende que se le exima de su obligación de actuar conforme a los principios de buena fe, lealtad y confianza que nuestro ordenamiento jurídico le exige a toda aseguradora.

A su vez, BGI alega ante este foro que la póliza suscrita por Chubb debe ser interpretada por el tribunal de la misma forma en que una persona normal la interpretaría. A esos efectos, sostiene que una persona pudiese entender que la notificación de una denegatoria de cubierta se debe dirigir a la dirección provista por el Asegurado. Aclara también que no mantuvo relación contractual alguna con la Federación y reitera que la obligación de determinar si procedía la cubierta y notificar tal determinación recaía sobre Chubb. Señala que la correspondencia de Chubb, dirigida a la Federación, era muestra clara de que la Aseguradora reconocía que era su deber primario e indelegable notificarle al Asegurado si bajo los términos y condiciones de su póliza existía cubierta.

Por tratarse de una sentencia sumaria, esta Curia debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Adelantamos que, luego de un análisis detenido del expediente, así como de la normativa aplicable, concluimos que los errores señalados por Chubb no se cometieron. Por tanto, no incidió el foro primario al conceder el remedio sumario parcial en cuestión. Veamos.

Son hechos incontrovertidos que la Federación obtuvo una póliza de seguro con Chubb con fecha de efectividad del 1 de junio de 2022 hasta el 1 de junio de 2023. Además, es un hecho

incontrovertido que, desde el 8 de junio de 2023, Anglo/Antilles PR tuvo conocimiento de la denegatoria de cubierta de la póliza de seguros y que, BGI, representante autorizado de la Federación, advino en conocimiento de la referida carta desde el 12 de junio de 2023. Sin embargo, ninguna de las anteriores remitió copia o informó de la denegatoria a la Federación sino hasta el 17 de enero de 2024. A raíz de ello, es un hecho incontrovertido además que ni BGI, Chubb y Antilles le informaron a la Federación sobre la denegatoria de cubierta dentro del término dispuesto por ley, a pesar de que advinieron en conocimiento de ello desde, al menos, el 8 de junio de 2023. Es decir, las partes codemandadas demoraron nueve (9) meses en notificar la determinación después de que la Federación presentó la solicitud de cubierta.

Cabe reseñar que la propia póliza de seguros emitida por Chubb para su Asegurado (la Federación) indicaba en la sección pertinente a las notificaciones, lo siguiente: "*Notice to the Insureds may be given to the Parent Company at the address as shown in Item 1 of the Declarations.*" Además, el "Item 1" al que hace referencia la cláusula antes indicada, dispone: "*Item 1. Company Federación Puertorriqueña de Fútbol Principal Address PO Box 367567, San Juan, PR 00936*".

No nos convencen las alegaciones de la parte apelante en cuanto a la naturaleza permisiva de la cláusula de la póliza. Chubb aduce que una lectura integral de la Sección 6 de la póliza cuestionada demuestra un claro contraste entre el uso de las palabras "*may*" y "*shall*" y asevera que concluir que la referida oración, en vez de ser permisiva, comprende una obligación de Chubb, equivale a concluir que si un asegurado que no es la Federación —como podría serlo un pasado director u oficial— presenta una reclamación bajo la póliza, la Aseguradora tendría una obligación de notificarle a la Federación y no al Asegurado que

presentó la reclamación. No obstante, el expediente y nuestro ordenamiento jurídico es claro en evidenciar que, bajo los hechos del caso, la parte apelante tenía una obligación legal de notificarle su determinación al Asegurado, entiéndase la Federación.

No podemos pasar por alto que, aun cuando lo acordado entre las partes es ley, ello no puede ir en contra de la moral, la ley y el orden público. Por lo que, aun cuando Chubb sostenga que la cláusula era permisiva y no obligatoria en cuanto a una notificación directa a la Federación, lo cierto es que Chubb no podía hacer un acuerdo contrario a la ley. Era un requisito de ley que la resolución de la reclamación fuera notificada a la Federación dentro del término establecido en el Código de Seguros.

Debido a que de la prueba presentada surge que la parte apelante no cumplió con el requisito de notificar a la Federación la resolución de la reclamación dentro del período razonable más corto de noventa (90) días después de habérsele sometido la reclamación, procede confirmar la *Sentencia Parcial* apelada y, en consecuencia, adjudicar el incumplimiento con el requisito de notificación dispuesto en el Artículo 27.162 del Código de Seguros, *supra.*

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia Parcial* emitida el 4 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones